# UNITED STATES DISTRICT COURT

for the

District of Alaska

Juneau Division

RECEIVED
SEP 15 2026
Clerk, U.S. District Court
Juneau, AK

John E. Pappenheim, M.D.

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

See attached

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 1:26-cv-00018-SLG
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☒ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dr. John Pappenheim |
| Street Address | 8024 Poppy Ct. |
| City and County | Juneau |
| State and Zip Code | Alaska, 99801 |
| Telephone Number | 907-723-0292 |
| E-mail Address | jepappenheim@icloud.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Alaska State Medical Board |
| Job or Title *(if known)* | |
| Street Address | 333 Willoughby Ave. Ninth Floor |
| City and County | Juneau |
| State and Zip Code | Alaska, 99801 |
| Telephone Number | 907-465-2550 |
| E-mail Address *(if known)* | MedicalBoard@Alaska.Gov |

Defendant No. 2

| | |
|---|---|
| Name | Alaska State Medical Society Physician Health Committee |
| Job or Title *(if known)* | |
| Street Address | 4107 Laurel Street |
| City and County | Anchorage |
| State and Zip Code | Alaska, 99508-5334 |
| Telephone Number | 907-562-0303 |
| E-mail Address *(if known)* | asma@asmadocs.org |

Defendant No. 3

| | |
|---|---|
| Name | Soberlink |
| Job or Title *(if known)* | |
| Street Address | 16787 Beach Blvd #211 |
| City and County | Huntington Beach |
| State and Zip Code | CA 92647 |
| Telephone Number | 714-975-7200 |
| E-mail Address *(if known)* | support@soberlink.com |

Defendant No. 4

| | |
|---|---|
| Name | TECAnalytics |
| Job or Title *(if known)* | |
| Street Address | 20015 SW Pacific Hwy #301 |
| City and County | Sherwood |
| State and Zip Code | OR 97140 |
| Telephone Number | 503-855-8330 |

Defendant No. 5

| | |
|---|---|
| Name | Center for Professional Recovery |
| | Dr. Gregory Skipper Medical Director |
| Street Address | 6021 Galahad Dr. |
| City and County | Malibu |
| State and Zip Code | California, 90265 |
| Telephone Number | 424-532-8890 |

E-mail Address *(if known)* info@tecanalytics.com

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 USCA ss12101 et seq (Title II ADA); 28 CFR 35.108; 28 CFR 35.130; 42 USCA ss1981; 42 USCA ss1983, Ex parte Young; Const. Amend. 14, Equal Protection clause; Hobbs Act 18 USCA ss1951; 18 USCA ss1962; 18 USCA ss1964.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* ____________________, is a citizen of the State of *(name)* ____________________.

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* ____________________, is incorporated under the laws of the State of *(name)* ____________________, and has its principal place of business in the State of *(name)* ____________________.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

The defendant, *(name)* ______________________, is a citizen of the State of *(name)* ______________________. Or is a citizen of *(foreign nation)* ______________________.

b. If the defendant is a corporation

The defendant, *(name)* ______________________, is incorporated under the laws of the State of *(name)* ______________________, and has its principal place of business in the State of *(name)* ______________________. Or is incorporated under the laws of *(foreign nation)* ______________________, and has its principal place of business in *(name)* ______________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Defendant's have tortiously prevented Plaintiff from working since 2019 (previously earning conservatively ~$250,000 per year). In addition requiring monthly payments to the PHC, costs of monitoring paid by Plaintiff to Soberlink and TECAnalytics, costs of treatment foisted upon Plaintiff paid to the Center for Professional Recovery, and legal fees; in total coming to approximately $1,882,000; and counting.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

The Alaska State Medical Board (Board), the State of Alaska Division of Corporations, Business and Professional Licensing (Division), the Alaska State Medical Association Physician Health Committee (PHC), aided and abetted by Soberlink, TECAnalytics, and the Center for Professional Recovery acted in association in a pattern of racketeering activity. This was initiated by discriminatory identification of Plaintiff in violation of Title II of the ADA, centered around coercive withholding of Plaintiff's medical license, and involved ongoing extortion of fees to several parties, a number involving interstate commerce. Defendant's racketeering enterprise has cost Plaintiff thousands of dollars in monitoring and treatment fees, prevented him from practicing medicine due to suspension, and now revocation, of his medical license, a Constitutionally protected property, and deprived the Plaintiff of his Constitutional rights to privacy and freedom from searches. The basis for withholding Plaintiff's license was done under color of official right, the pretext being protection of the public from a practicioner unable to practice with adequate skill and safety due to the diagnosis of a substance use disorder. There is no body of objective evidence that demonstrates that physicians with a substance use disorder are unable to practice with adequate skill and safety. Further, and specifically, no nexus between the presence of a substance use disorder and the Plaintiff's ability to practice with adequate skill and safety has ever existed; nor has a credible allegation of such been made. Plaintiff has always practiced medicine with adequate skill and safety.

1. When Plaintiff applied to renew his medical license, which had inadvertently and briefly lapsed, on 2/27/2017 he answered affirmatively to question #4 on the renewal application, that he had been charged with a DUI. Based on this information, Debora Stovern, the executive administrator for the Board at the time, interrupted the business-as-usual reinstatement process, directing the Plaintiff to contact the PHC for evaluation and recommendation. In her email of 3/21/2017 Ms. Stovern stated: "Once that information is received in our office, our investigative staff will complete the review of your application and determine how to proceed."

2. Inclusion of question #4 on the relicensure exam, utilizing a "yes" response to identify those believed to have a substance use disorder, and then withholding relicensure, based solely on the assumption of Plaintiff having a substance use disorder without any nexus to ability to practice is a violation of Title II of the ADA (42 U.S.C.A. ss12101 et seq), 28 CFR 35.108, 28 CFR 35.130, 42 U.S.C.A. ss1981.

3. Plaintiff was convinced by Dr. Alexander Vonhafften, a member of the PHC, and also a colleague he had known for some time with whom he was on good terms, to engage, cooperate with, and submit to the dictates of the PHC.

4. Dr. Mary Ann Foland, representing the PHC, told Plaintiff on 4/3/2017, that he would need to schedule an evaluation with Dr. Michael Herndon, the only practicioner in the state of Alaska that the PHC approved of to do this type of evaluation (substance use disorder).

5. There are many qualified practicioners in Alaska, licensed by the Board, who are credentialed by specialty practice boards, capable of doing such evaluations.

6. Upon completing his evaluation with Dr. Herndon, on 4/18/2017, Plaintiff was told that he would need to complete a 30-90 residential treatment program for his diagnosis of alcohol use disorder, severe.

7. Plaintiff implored Dr. Herndon not to require him to go to residential treatment, stating that this was clinically unnecessary, given his current history of 2 1/2 months of sobriety, and would create a financial hardship. Dr. Herndon declined to give a definitive answer, stating that there were "certain expectations" for physicians with a diagnosis of alcoholism.

8. When Plaintiff spoke with Dr. Herndon on 4/19 he informed Plaintiff that after speaking with Dr. Mary Ann Foland, and getting her approval, he was not going to recommend residential treatment as a result of Plaintiff's pleas, but that this was contrary to what was generally expected.

9. There was never any evidence or allegation that Plaintiff practiced medicine with anything other than adequate skill and safety. There was no conclusion drawn from Dr. Herndon's report that Plaintiff's diagnosis of alcohol use disorder hindered his ability to practice medicine effectively.

10. Plaintiff's license to practice medicine was withheld until he signed the Consent Agreement, which he did under duress on 6/20/2017.

11. Plaintiff's license was reinstated on 6/29/2017. The Medical Board did not sign the Consent Agreement until 8/3/2017.

12. Debora Stovern, in an email dated 7/27/2017 refused to pay for Dr. Herndon's bill, in violation of AS 08.64.338

13. The Consent Agreement, which Plaintiff signed under duress created by the Medical Board and Division, required: payment of a fine to the Medical Board, random urine drug screens to be analyzed by TECAnalytics,

breathalyzers done 3-4 times a day, every day, to be performed through a Soberlink device, and compliance with the PHC which charged an initial fee and then a monthly fee thereafter.
14. TECAnalytics and Soberlink are companies located out of Alaska, with service provision and billing involving interstate commerce. The Division, acting on behalf of the Board, had an arrangement to use TecAnalytics exclusively as a monitoring company. The PHC used Soberlink exclusively for breathalyzer monitoring. Both TecAnalytics and Soberlink sent results of monitoring to the PHC. The PHC and the Board have a memorandum of understanding. The Board, PHC, TecAnalytics, and Soberlink are an association-in-fact. The Center for Professional Recovery also acted in coordination with the PHC.
15. Creating economic duress by withholding Plaintiff's medical license, without just cause, then using that duress to coerce him into signing a Consent Agreement that forces him to utilize services of providers located in other states is a violation of the Hobb's Act: 18 U.S.C.A. ss1951. It also violates 42 U.S.C.A. ss1981, 42 U.S.C.A. ss12101 et seq, 28 CFR 35.130.
16. When Plaintiff was found to be in violation of the Consent Agreement he was forced, on pain of license revocation, to have an evaluation and then a 30 day residential treatment at an out of state facility, Center for Professional Recovery (CPR), in California.
17. CPR was part of an exclusive referral network involving the PHC.
18. Plaintiff was forced to sign a release of information so that CPR and the PHC could communicate freely.
19. The PHC was intimately involved in CPR's decision regarding Plaintiff's length of stay. Dr. Foland was teleconferenced in to Plaintiff's weekly treatment planning meetings.
20. Plaintiff had to pay for his evaluation and treatment out-of-pocket.
21. Plaintiff's evaluation and treatment at CPR involved interstate commerce.
22. Upon completion of the residential treatment at CPR Plaintiff was deemed able to be fit to practice.
23. Plaintiff's license was suspended, despite his completing remediation and being deemed fit to practice, for the duration of his probationary period. This was a sua ponte decision by ALJ Mandala. Plaintiff's violations of his Consent Agreement did not involve the practice of medicine as defined in the state of Alaska.
24. As of 8/3/2022 Plaintiff satisfied the specific performance required of his Consent Agreement.
25. The Medical Board and Division did not return Plaintiff's license to practice medicine.
26. The Medical Board and Division continued to require Plaintiff to comply with all the terms of the Consent Agreement, despite it having expired. This involved ongoing monthly payments to the PHC, monthly payments to Soberlink for testing, monthly payments to TECAnalytics for testing urine drug screens, and daily (Monday-Friday) check-ins for random urine drug screens, Soberlink breathalyzers four times per day 365 days per year.
27. Rather than returning Plaintiff's license to practice medicine the Division filed further allegations against Plaintiff, all identical to those already litigated, in pursuit of extending the Board's extortionate control.
28. The Board, Division, PHC, CPR, TECAnalytics, and Soberlink, have formed an association, an enterprise, that preys on physicians such as the Plaintiff, made vulnerable by their substance use disorder. This association is hereafter referred to as the medical regulatory treatment complex (MRTC).
29. Under the guise of protecting the public, and under the color of official right, the Division, Board, and PHC exploited Plaintiff's situation as a physician with an alcohol use disorder. The Division and Board created economic duress for the Plaintiff by holding his medical license hostage; this economic duress could only be alleviated by the Board. The Board, through the PHC, then required Plaintiff to be evaluated by a medical professional willing to comply with the standard dictates of the Board and PHC, which were then incorporated into the Consent Agreement. Plaintiff's economic duress was then used to coerce him into signing the Consent Agreement. The Consent Agreement required Plaintiff to subjugate himself to the MRTC, relinquishing his constitutional rights to privacy and freedom from searches, in exchange for the return of his medical license. As part of the Consent Agreement Plaintiff was also required to make payments to various members of the MRTC; some regularly, some sporadically. Several of these transactions involved interstate commerce. This is a pattern of racketeering in violation of: 18 U.S.C.A. ss1951, 18 U.S.C.A. ss1961, 18 U.S.C.A. 1962.
30. Cheryl Mandala, acting in an extra-judicial capacity as an advisor to the Board, has been instrumental in perpetuating meritless allegations against Plaintiff, thereby prolonging his involvement in the MRTC. This has occurred on several occcasions when she met with the Board in an advisory capacity.
31. When Plaintiff refused to agree to the extortionate demands of the Medical Board they revoked his license on September 21, 2023.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff seeks relief from the Court that it sanction the defendants to compensate Plaintiff, for their civil RICO violations, under 18 U.S.C.A. ss 1964, for: his lost wages totaling $1,600,000 (and counting); legal fees totaling ~ $200,000, monitoring/forced treatment fees totaling $82,0000; which totaled and trebled come to $5,646.000. Plaintiff also requests to be similarily compensated for ongoing lost wages, and legal fees. Plaintiff seeks relief from the Court in the form of punitive damages under 42 USCA ss1983 in the amount of $1,500,000 in compensation for damage to his professional reputation, destruction of his successful private practice, loss of constitutional right to privacy and freedom from searches, emotional suffering, and moral injury.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Sept. 15th, 2026

Signature of Plaintiff [signature]

Printed Name of Plaintiff John E. Pappenheim, M.D.

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Street Address ____________

State and Zip Code ____________________

Telephone Number ____________________

E-mail Address ____________________